# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 6428 | **DATE** | June 19, 2001 |
| **CASE TITLE** | *United States of America ex rel. Aaron Wade vs. Keith Cooper, et al.* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner Aaron Wade's petition for a writ of habeas corpus is before this court on remand from the Seventh Circuit for redetermination of the harmless error issue in light of the state court record. Having reviewed the state record, the court finds the error was harmless. Accordingly, the court denies petitioner Aaron Wade's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 46 |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN 19 PM 5: 47 | date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA *ex rel.* )
AARON WADE )
)
      Petitioner, )
)
   v. ) Case No. 95 C 6428
)
KEITH COOPER, Warden,[1] ) Judge James H. Alesia
)
      Defendant. )

DOCKETED
JUN 2 0 2001

## MEMORANDUM OPINION AND ORDER

The current matter – Aaron Wade's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 – is before this court on remand from the Court of Appeals for the Seventh Circuit. For the following reasons, the court denies Aaron Wade's petition.

## I. BACKGROUND

In 1986, Neal Wallace ("Wallace") was shot several times outside of a gas station mini-mart. In 1992, Petitioner Aaron Wade ("Wade") and his brother, Alvin, were arrested and charged with Wallace's murder. In September of 1993, following a bench trial, Wade was found guilty of murder in the first degree and sentenced to thirty-five years in jail. His conviction and sentence were affirmed on appeal, and Wade's petition for leave to appeal was denied by the

---

[1] Keith Cooper has been replaced by William O'Sullivan as Warden. Thus, this case proceeds against O'Sullivan. Further, petitioner originally brought suit against Attorney General James E. Ryan. However, the only proper party is the custodian, and so this court dismissed Ryan from the case on May 29, 1997.

Illinois Supreme Court. Wade did not bring any collateral attacks within the state court system. He did, however, file the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In his § 2254 petition, Wade argues that (1) the trial court's failure to admit a statement by the victim – in which he identified his attackers to a police officer as three unknown males – was a violation of Wade's rights under the Confrontation Clause; (2) the trial court's consideration of a statement by the victim deprived Wade of a fair trial; (3) his trial counsel was ineffective in failing to locate a witness; and (4) the evidence presented at trial was insufficient to support a conviction beyond a reasonable doubt. This court previously ruled on Wade's § 2254 petition. *United States of Am. ex rel. Wade v. Cooper*, 965 F. Supp. 1140 (N.D. Ill. 1997). In doing so, this court rejected Wade's second, third and fourth arguments as meritless. *See id.* at 1145-47. However, the court considered the merits of Wade's argument regarding a violation of his constitutional rights under the confrontation clause.

Wade argued that the trial court violated his rights under the confrontation clause when it excluded from the record a statement by the victim. More specifically, Wade argued that the trial court should have admitted a statement made by the victim to a police officer who arrived on the scene following the shooting. The facts relevant to this argument are the following. Right after he had been shot, Wallace told the clerk at the mini-mart that "the Wade boys did it to me." The clerk – Robert Williams – testified during the trial for the prosecution and relayed that statement to the court. In essence, Wallace was testifying through Williams. The trial judge admitted that statement as an excited utterance. However, despite being shot four times, Wallace

2

was able to get up and walk around. When the police officers arrived on the scene, the officers spoke to Wallace. At that time, Wallace told one of the officers that he did not know who had shot him but that it was three, unknown black males. This statement clearly contradicted the earlier statement made by Wallace to Williams. The trial court found that the later statement, made to the officer, was not admissible because it was hearsay and did not fall into any category of exceptions.

In his § 2254 petition, Wade argued that the trial court's refusal to admit the second statement – that three unknown males were his assailants – which contradicted Wallace's first statement that the Wades did it violated Wade's constitutional right to confront his accusers. In ruling on Wade's petition initially, this court agreed with Wade and found that the trial court's refusal to admit Wallace's statement to the officer violated Wade's rights under the Confrontation Clause of the Sixth Amendment. However, this court found that this error was harmless and, therefore, denied Wade's petition.

Wade appealed the denial of his § 2254 petition to the Seventh Circuit. The Seventh Circuit agreed that, by refusing to allow Wallace's statement to the officer into the record, the trial court violated Wade's rights as guaranteed under the Confrontation Clause. However, the Seventh Circuit remanded this case for "redetermination of the harmless error question in light of the state court record."[2] Thus, the court will look only at the issue of harmless error in light

---

[2]In originally deciding this case in 1997, the court had before it the Illinois Appellate Court Order, the appellant's briefs, the petition for leave to appeal to the Illinois Supreme Court and its denial. The court did not have the transcripts from the trial because, as the respondent stated in its brief, the facts adduced at trial were reported in the Appellate Court's order, and
(continued...)

3

of the state court record, which includes three volumes from the trial proceeding and one volume of the supplemental record.

A. **Harmless Error Standard**

This court found – and the Seventh Circuit concurred – that the exclusion of Wallace's statement to the police officer was a violation of Wade's constitutional rights under the Confrontation Clause. However, a violation of the Confrontation Clause is subject to harmless error analysis. *United States v. Castelan*, 219 F.3d 690, 694 (7th Cir. 2000). In fact, if that constitutional violation is harmless, the error will not cause an otherwise valid conviction to be set aside. *United States v. Ochoa*, 229 F.3d 631, 639-40 (7th Cir. 2000); *see also Chapman v. California*, 386 U.S. 18, 24 (1967). Generally, the standard for determining harmless error is whether the reviewing court can determine beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* However, in habeas proceedings, the federal courts apply the "less onerous standard announced in *Kotteakos v. United States*, 328 U.S. 750 (1946) – an error is harmless unless the party seeking relief can show the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Tague v. Richards*, 3 F.3d 1133, 1140 (7th Cir. 1993) (citations omitted). Thus, the reviewing court must determine whether the error had a substantial and injurious effect or influence on the verdict. *Quinn v. Neal*, 998 F.2d 526, 529

---

²(...continued)
Wade did not challenge those facts. Thus, under 28 U.S.C. § 2254(e)(1), the court could assume that all factual determinations made by the trial court were correct. However, the Seventh Circuit explicitly ruled that, in determining harmless error on collateral review, the court must look at the record as a whole. *See Jenkins v. Nelson*, 157 F.3d 485, 495 (7th Cir. 1998). Thus, as directed in the December 17, 1999 order, the court will now re-examine the harmless error issue in light of the complete trial court record.

4

(7th Cir. 1993) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). Further, the Seventh Circuit has held that a habeas petitioner is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" *Tague*, 3 F.3d at 1140 (quoting *Brecht*, 507 U.S. 619).

The Seventh Circuit has determined that, according to Supreme Court precedent, a court is required to "review the record as a whole on habeas review to determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict." *Jenkins v. Nelson*, 157 F.3d 485, 495 (7th Cir. 1998) (citing *California v. Roy*, 519 U.S. 2 (1997)). *See also Quinn*, 998 F.2d at 529 ("Proper application of the *Kotteakos* standard requires a de novo examination of the trial record.") Specifically, the Seventh Circuit has held that a reviewing court must make a *de novo* examination of the record as a whole in order to determine whether the evidence in question was such that a rational fact-finder, absent the error, would have arrived at the same verdict. *Id.* at 495-96. Further, in a habeas proceeding, the court must determine whether the excluded testimony or limited cross-examination, in light of all the other evidence presented, would have an "injurious effect or influence" on the trial. *Tague*, 3 F.3d at 1140. Because the review is collateral, the error in question need not be harmless beyond a reasonable doubt. *Jenkins*, 157 F.3d at 494 (holding that if, in applying the proper standard, the court is "in grave doubt as to the harmlessness of the error," the conviction must be reversed) (citations omitted).

B.  **Trial Court Proceedings**

According to the state court record, the state presented the following evidence at Wade's trial:

5

- Elcy McCoy: Testified that she was present at the shooting, along with her sister, Shamise, and Robert Jackson, and that Wade and his brother were the shooters (Trial Ct. Record, Vol. 2 at C46 - C52); testified that the car identified as being at the scene of the murder was her car (*Id.* at C45:16 - C46:13, C64:5 - C66:17). Specifically, she testified that Alvin Wade got out of the car and was talking to Wallace; Aaron then got out of the car and walked over to Wallace and shot him in the head. (*Id.* at C49:16 - C51:1.) She also said that Wade's motive for shooting Wallace was to avenge the shooting of his brother (as that shooting was ordered by Wallace, the leader of a rivaling gang faction). (*Id.* at C56:1-15.) She was impeached by the defense by her inconsistent statements. Specifically, the defense pointed out inconsistencies between her testimony at trial and her testimony to the grand jury regarding the number of shots she heard fired. (*Id.* at C70:16 - C75:6.) The defense also impeached her by showing bias to the extent that she was upset about her uncle being killed. (*Id.* at C98:14 - C99:15, C91:3 - C92:21, C78:15-21.)
- Shamise McCoy: Testified that she was present at the shooting, along with her sister, Elcy, and Robert Jackson, and that Wade and his brother were the shooters. Specifically, testified that Alvin was outside talking to Wallace when Aaron walked over and shot Wallace in the head. (*Id.* at C117:5 - C121:23.) The defense impeached her by showing her bias (because of the death of her uncle) being killed and by her inconsistent statements. (*Id.* at C133:24 - C136:4.) Specifically, the defense showed inconsistencies between her trial testimony and her grand jury testimony regarding the events of the shooting. (*Id.* at C138 - C141.) Finally, her credibility was impeached by the defense in showing that she had used a false name in the past. (*Id.* at C139:9 - C141:6.)
- Dr. Mitra Kalelkar (Medical Examiner): Testified that the victim Wallace died as a result of multiple gun shots wounds. (*Id.* at C16:18 - C17:8.)
- Robert Williams[3]: Testified that he was working at the mini-mart as a security officer the night of the shooting; he saw the Wade brothers at the mini-mart near the time of the shooting; he heard shots fired; and Wallace told him that the Wade boys were the shooters. (*Id.* at C36:9 - C40:7, D3 - D5:18.) The defense impeached him with his inconsistent statements. Specifically, the defense pointed

---

[3]In the trial court record, Robert Williams's testimony begins at page C32 of Volume 2. His testimony then stops – mid-questioning – at page C40. At that point, following a recess, the trial resumes and begins with the State calling Elcy McCoy to the witness stand. No mention is made of Robert Williams and no explanation occurs on the record as to why his testimony ended with a question still pending and no cross examination being conducted. However, the transcript of Williams's testimony reappears nearly two hundred pages later, beginning at page D3, and resumes mid-questioning.

out inconsistencies between his statements to the police at the time of the shooting and his trial testimony. (*Id.* at D21:20 - D13:7, D14:19 - D17:24.)

- Officer Samuel Crawford: Testified that he responded to and investigated the shooting incident in question; he found Elcy McCoy's car and impounded it after it was reported having been used in the shooting. (*Id.* at C111:7-22.)
- Willie McCoy: Testified that Wade told him that he had killed Wallace to avenge the shooting of Wade's brother by one of Wallace's gang members. (*Id.* at C150:5 - C152:16.) The defense impeached him (or attempted to) by showing that McCoy was a drug addict (*Id.* at C155:10-15, C156:7-22), and by his inconsistent statements. Specifically, the defense tried to point out certain omissions or inconsistencies between his testimony at trial and his testimony at the grand jury. (*Id.* at C153:21 - C154:24.)
- Officer Paul Hernandez: Testified that he investigated the crime scene where the shooting occurred and further testified to his findings. (Trial Ct. Record, Vol. 3 at E4:24 - E8:7.) The defense impeached him with his inconsistent statements. Specifically, the defense showed that his investigation report stated that there were three perpetrators, while at trial he testified that he believed there were two perpetrators. (*Id.* at E10:13 - E11:18.)
- Officer Terrance Thedford: Testified that he was assigned to Wallace's case the day after the shooting (after Wallace died). (*Id.* at E24:16 - E25:21.) He further testified that Robert Williams identified Wade in a line-up in 1986. (*Id.* at E32:8 - E33:15.) Also, he testified that Willie McCoy called him in 1992 regarding the shooting. (*Id.* at E34:3-14.)

In addition, the defense presented the following evidence at Wade's trial:

- Robert Jackson: Testified that he was not in the presence of the McCoy sisters or Wade and his brother on the night of the shooting. (Trial Ct. Record, Vol. 3 at E64:2-24.) The prosecution impeached him with his three prior convictions. (*Id.* at E75:12 - E76:21.)
- Anderson Slater: Testified that, at her uncle's funeral, Elcy McCoy said that she was going to get the Wade boys (as she believed that the Wades had something to do with her uncle's death). (*Id.* at E98:9 - E101:15.) The prosecution impeached him with his two prior convictions. (*Id.* at E115:18 - E116:6.)
- Larry Hart: Testified that he was outside the funeral home at the funeral for Elcy McCoy's uncle and that he heard Elcy say she was going to get the Wades. (*Id.* at E124:3 - E126:5.) He further testified that he saw Elcy and Willie McCoy talking in the bathroom at a Thanksgiving dinner party. (*Id.* at E127:3-24.) The prosecution impeached him with the fact that he is on probation for a previous offense. (*Id.*, at E137:19-22.)

7

- John Johnson: Testified that he was outside the funeral home at the funeral for Elcy McCoy's uncle and that he heard Elcy say she was going to get the Wades for having something to do with their uncle's death. (*Id.* at E141:13 - E143:2.)
- Ronny Brown: Testified that he was at the funeral for Elcy McCoy's uncle and that he heard Elcy say she was going to get them all, especially the Wades. (*Id.* at E153:3 - E154:17.) He further testified that he was with Elcy and Willie McCoy over Thanksgiving at that he overheard a conversation that took place in the bathroom between the two in which Elcy said that they needed to get the Wades. (*Id.* at E155:15 - E157:18.) The prosecution impeached him with his prior conviction. (*Id.* at E169:20-24.)
- Grand jury testimony of Elcy McCoy which shows that Elcy testified that Alvin Wade fired a shot at the security guard.[4] (*Id.* at E170:11 - E176:4.)

In returning a guilty verdict, the trial court recognized minor discrepancies in the testimonies of the prosecution witnesses but found that those could be explained "to a greater or lesser degree by the frailties of the human memory exasperated by the passage of time." (Trial Ct. Record, Vol. 3 at F33:12-14.) Further, the trial court recognized certain weaknesses in the prosecution's case; namely, the passage of six years before the McCoy sisters came forward, the McCoy sisters' motives for testifying against Wade, the fact that Willie McCoy did not report Wade's alleged confession but instead drove Wade to visit his niece, and the fact the Robert Williams did not tell the police that Wallace said the Wade boys shot him. However, the trial court further found that the "code of silence in the cult of settling these sorts of events goes a long way to explain the witnesses (*sic*) failure to act sooner, and it helps to judge the credibility of the State's witnesses." (*Id.* at F34:17-21.) On the other hand, the trial court – in assessing the credibility of the defense witnesses – found that they were the "most disreputable, disgusting

---

[4]This testimony was originally attributed to Shamise McCoy, but later discussion on the record by the attorneys shows that it is actually the testimony of Elcy. This testimony was used to impeach Elcy, as she testified at trial that she fled after hearing the shots fired at Wallace. (Trial Ct. Record, Vol. 3 at E173:22 - E175:1.)

8

witnesses, most of whom were royally impeached by their own prior convictions," and determined that none of those witnesses were "credible or convincing." (*Id.* at F34:22 - F35:3.) In sum, the trial court found that the more credible or convincing evidence led to a guilty verdict: "So stripping everything away, the case rests squarely on the evidence and the credibility given by the McCoy sisters as corroborated by the other evidence before the Court." (*Id.* at F35:4-8.)

C. **Harmless Error Determination Based Upon the Trial Court Record**

In summing up the evidence, the trial court clearly stated that it was relying on the testimony of the McCoy sisters and the evidence that corroborated their testimony. Thus, the trial court seemed to be giving the most weight to the testimony of the McCoy sisters, not the testimony of Williams. It appears that the trial judge relied upon the other evidence only to the extent that it corroborated the McCoy sisters' testimony. In other words, whatever was said by Wallace to Williams was used only to corroborate what the McCoy sisters stated in court.

In this bench trial, the trial court was in the position to best weigh the credibility of all the witnesses. In rendering his verdict, the judge found that the State's witnesses – namely Elcy and Shamise McCoy – were credible, and that the minor variations were understandable after the passage of time. On the contrary, the trial judge found the defense witnesses to be wholly not credible. Questions of witness credibility typically rest with the finder-of-fact. *United States v. Scott*, 145 F.3d 878, 883 (7th Cir. 1998). Reviewing courts should grant considerable deference to the fact-finder's credibility determination. *Id.* "'Testimony is not incredible as a matter of law ... only because the witness may have been impeached by certain discrepancies in his story, by prior inconsistent statements, or by the evidence of a motive to provide evidence

9

favorable to the government.'" *Id.* (quoting *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996)). This court must give great deference to these findings of credibility.

Given the trial court's statements regarding his reliance on the testimony of the McCoy sisters, it does not appear that the error contributed to the verdict. Although Wallace's initial statement to Williams (accusing Wade of the shooting) was admitted into evidence, it does not appear that the judge – sitting as the finder-of-fact – relied upon that initial statement. Thus, the exclusion of a contradictory statement by Wallace would have little or no effect on the verdict. In rendering the verdict, the trial court specifically stated what evidence he found credible and what he found unconvincing; he did not refer to Wallace's statement to Williams at all. Further, the trial court found the testimony of the McCoy sisters to be convincing and crucial in rendering its verdict. Although Wallace's statement to Williams was important, it does not seem to have an effect on the verdict. If anything, Williams's testimony – including his stating what Wallace told him – seemed to be used as nothing more than corroborating evidence by the trial court. Based on the state court record, the court finds that the additional testimony of Wallace – that being his statement to the officer describing his assailants – would not reasonably have changed the judge's mind. *See United States ex rel. Ashford v. Illinois Department of Corrections*, 871 F.2d 680, 688 (7th Cir. 1989) (holding that the inclusion of certain testimony would not have changed the verdict in a bench trial and using the trial court's words in reaching her verdict as support for that holding).

Further, under the facts of this case, the court has no doubt that the error did not have a substantial and injurious effect or influence on the verdict. Having reviewed the record as a

10

whole, the court concludes that testimonies of Shamise and Elcy McCoy – combined with the fact that Elcy McCoy's car was found to have been used in the shooting, Robert Williams's testimony regarding the presence of the Wades and the victim at the mini-mart (corroborating the McCoys' testimony), and the medical testimony regarding the cause of death – are sufficient to defeat Wade's habeas petition. *See Miles v. Burris*, 54 F.3d 284, 289 (7th Cir. 1995) (holding that, taking all the evidence as a whole, the verdict was supported by the record, and the petitioner failed to show that testimony about an anonymous tip that was erroneously admitted had a substantial and injurious effect or influence on the verdict). Thus, in light of the evidence against Wade, the court finds that Wade has not met his burden of demonstrating that the exclusion of Wallace's statement to the police officer had a substantial and injurious effect or influence in determining the trial court's verdict. The fact that this was a bench trial also supports the court's finding of no substantial and injurious effect or prejudice on the verdict. *See United States v. Stanley*, 411 F.2d 514, 516 (7th Cir. 1969) (finding that, while the error may have required reversal in a jury trial, given the record from the bench trial, it did not appear that the trial court relied upon the evidence and, thus, the error did not justify reversal). *See also United States ex rel. Ford v. Pate*, 425 F.2d 178, 180 (7th Cir. 1970) (holding that when an error occurs during a bench trial, the likelihood of prejudice is reduced).

In sum, the court finds that the exclusion of Wallace's statement to the police officer did not have a substantial and injurious effect or influence on the verdict. Thus, the error was harmless. Accordingly, Wade's petition for a writ of habeas corpus is denied.

## CONCLUSION

For the foregoing reasons, the court denies petitioner Aaron Wade's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Date: JUN 19 2001

JAMES H. ALESIA
United States District Judge